Judge Hamilton and I think I'm sure I can speak for Judge Hamilton in this regard are pleased and honored to join Judge Pamela Harris in her first appearance in the Court of Appeals for the Fourth Circuit as the United States Circuit Judge. Welcome to the Fourth Circuit and Judge, as I say, Judge Hamilton and I are just pleased as we can be to serve with you in your first case and your first appearance here. Thank you very much. Glad to be here. Good morning Judge Hamilton. Good morning. Can you hear me? Yes, we can. Good. Just wanted to make before this panel, our only case before this panel, is American Whitewater versus Tidwell. We're pleased to have you here this morning and look forward to these interesting cases. Mr. Galbraith, you have the floor, sir. Good morning. May I? Thank you, Your Honor. May it please the Court, my name is Nathan Galbraith and I Yes, Judge Hamilton. I want to ask you a question, which is a general question, I think, that will set the tone for your argument. What exactly does American Whitewater seek in this litigation? American Whitewater is asking this Court to determine that floating is a value that led to the Chattooga Headwaters being designated as a wild scenic river and as a value that led to designation of the river that it be protected and enhanced by the agency, not banned, not restricted, not severely limited, all the things that are the opposite of preserving and enhancing. Let me give you a follow-up question. I don't think floating is an outstanding river valley, remarkable value, and if it is, why aren't all the other things in the 1971 report that led to Chattooga's designation, including hiking and fishing, scientific study, geological, scenic, historical values, why aren't all those things remarkable, outstanding values? That is an excellent question and it's one that the District Court completely misapprehended because the District Court apparently looked no further than the cover of the 1971 study document. Judge Hamilton, as you pointed out, it is that document and all the parties to this proceeding agree that the 1971 study is the operable document that sets out what are the outstanding values for this river and I'd like to point to some specific parts of the record to answer your question because you can't just stop at the cover and a single excerpt from that study, which is what the District Court did. You have to actually look at the substance of that study and if you look at the table of which is on page 93 of the Joint Appendix, it sets out what's happening in this study. There's about 50 pages of background, then it gets into the real meat of the study and on page 143 of the Joint Appendix, it talks about the primary considerations that Congress looked to when it designated this river wild and scenic and front and center, right on the primary considerations, right in the very beginning, it talks about specifically if this river is protected wild and scenic and particularly the sections of the case, it will increase canoeing opportunities and it talks about how in the 1968 Wild and Scenic Rivers Act, how there were multiple rivers that were identified for study to see if they should become part of the Act and only four of those rivers were in the southeastern United States and right there on page 143 of the Joint Appendix, it talks about how the Chatooga is the only one of those four rivers in the southeastern United States that has outstanding opportunities for canoeing, but the real meat of the study where it really gets down and actually names the values and this goes directly to your question, is on pages 155 through 162 of the Joint Appendix. Right here is where Congress looked and set the values for this river. They're broken on page 155, it talks about the alternatives that were considered. The alternatives were simple, should they just allow the status quo and not protect it and willy-nilly let private development take over the shores of the river? Two, should they develop the or three, should they protect it as wild and scenic? And it goes on to describe the exact values of the river and it splits them into three categories, tangible values, intangible values and values that would actually be lost if the river is designated wild and scenic. The values that are to be protected, the tangible ones are a free-flowing river, fishing, there's just a handful of them, fishing, floating, which is at issue here, hiking, camping, clean water and preservation of the scenic and geologic features of the river. Those are the tangible values, but it also talks about intangible values in that same section and it says that it's hard to describe in words what these intangible values are, but they certainly exist for the canoeist as he meets the challenge of the water. So there's not only a tangible value of floating, there's also an sense of adventure that one gets on this river. That raises another question on my part. If all of these values that were listed in the 1971 report were to be maximized in addition to floating, what would happen? Maximized but if they're protected and enhanced consistent with a Wild Scenic Rivers Act? Well, they're listed as the values in the 1971 report and all you want to talk about is floating and I don't think floating is an outstanding remarkable value. I think floating, like boating and everything else, falls within the category of recreation. I think that is the outstanding remarkable value. That is the agency's argument here, Judge Hamilton, and that argument is what is so dangerous about this case, is that it threatens to undermine Congress's very purpose in passing the Wild and Scenic Rivers Act in the first place. That act doesn't talk about protecting some kind of amorphous general categories like recreation and geology. It talks about protecting specific, outstanding, remarkable, and I would point the court to the fact that these are adjectives. Recreational values, geologic, scenic, historic, and other values. Those are not broad categories. The values are not themselves scenery or recreation. They are the specific recreational values and in this case, based on the study that I and the portions of the study I was just referring to, there's no question that floating is one of those recreational values. Now the purpose of the statute... Can I try to ask what I think is the same question but in a slightly different way? It just seems as though the crux of your argument has to be that there's something in the congressional intent, in the record, that shows that floating was supposed to get priority over all the other things like fishing, most obviously, about hiking, scenery, being alone in the forest, all of that stuff. That the priority goes to floating and I'm not seeing in what you just said the indication that floating comes first, gets the first priority and cannot be balanced off against all of the other things that Congress listed. Judge Harris, I would agree with you completely. Appellants agree with that position. We're not saying... You have to balance floating then. You, you, there's not necessarily a question of balance. It's a question of... Well that's what I was the question that Judge Harris put to you. It has to be balanced with these other things and it's part of recreation. You agree with that, right? That's how it gets in here. I don't agree that floating is some kind of subcategory of recreation. I agree, I am arguing that is a specific recreational value and I'm not saying that floating has to come in front of anything else. Appellant's argument is that all values of the river, and there was just a handful of them, I just read them, the handful of those values all have to be protected and enhanced and all of this... That's where you say that's your, that your primary argument is that Judge Lewis and the Forest Service misunderstood that proposition and fatally erred, Judge Lewis did. Is that right? That's exactly right, Judge King. And this is an issue of first impression not only for this circuit and for Judge Lewis but for any court. No court has ever determined what constitutes a value under the Wild and Scenic Rivers Act. The only court that's come close was the Eighth Circuit in the Sokol case and in that case the Eighth Circuit talked about how values are unique, rare, and exemplary, not general amorphous categories like recreation and I'd like to give an analogy... And we review this giving a lot of deference to the United States Forest Service. They're the experts in this context as far as the courts concerned, isn't that correct? They are the agency that is designated with management of this river and I'd like to circle back to answer your question to say what is so dangerous about the argument that the agency is providing here which is that these are broad categories and that's all they have to protect and within that they can ban or prohibit as they see fit. Imagine the example, let's talk instead about recreation about... In any event, the 2012 decision that you're challenging expanded the floating on the part of the river that you wanted on but what they say that's what 21 of or all but 20 all but four miles of 27 miles all 23 of 27 miles, correct? That's what this agency would have the court believe but in reality... Okay go ahead. Floating has been present on this river for over 250 years and it was the plaintiffs in this case the individual appellants were floating this river both prior and after Wild and Scenic designation and now are prohibited from doing so. This was not a situation where there was some floating added. What happened was back in 1976 the agency arbitrarily and in violation of the Wild and Scenic Rivers Act removed this primitive wilderness compliant use. We're not talking about commercial commercial use. We're not talking about motorized use. We're talking about someone showing up at a river with a canoe and a paddle and silently floating down something that's consistent with wilderness and what happened here is the Forest Service artificially removed all floating and in the 2012 decision that's at issue in this case they only partially restored it and they do they make that argument they say well hey we restored some of this what's the problem? The problem is the Wild and Scenic Rivers Act required that they protect and enhance the recreational floating value on these very sections. Not ban it, not severely limit it. But also the fishing right you would agree then that they were supposed to protect and enhance the angling opportunities. That's right and that and Judge Harris your question brings up another important point which is there is no problem with protecting both fishing and floating. First of all on virtually every other river in the excluding one group or the other. When we talk about floating, what are you talking about, rafts? Floating and boating we're talking about kayaks and canoes. Kayaks, what about rafts? I believe the decision... I come over to West Virginia they do a lot of rafting on the New River. Rafting is also floating. In this case... So you're talking about rafting and you're talking about canoeing and you're talking about kayaking. What else you talking about? Canoeing, kayaking and and some kind of inflatable device is the fact in 1969 when the agency was studying this river that's how they studied it. They floated down it from the top to the bottom. That's how we have the information in the 1971 study that we have. But the anglers right I mean I understand that you think the anglers should be able to do just fine even if there are is floating where they're trying to fish but they think not right and isn't that what the agency called asymmetric conflict? Judge Harris it's not the appellant's opinion it's what the record makes clear. Let me point out that in page 742 of the Joint Appendix there's a pie chart that was put together by the agency's own expert and it shows that in an entire year there are 34 or less days on which if there are no restrictions on paddling whatsoever that there will be any craft a raft a canoe or a kayak that can even possibly float the river. Only 34 or less days and on page 697 of the Joint Appendix the same expert goes on to say that really only half of those 34 days somewhere between 6 and 17 days is someone even likely to be in a boat on the river if there are no restrictions. That is not substantial interference that is not any kind of interference that's not even enter an interaction and page 929 excuse me 689 to 692 of the Joint Appendix further shows that there's really only about 1 to 4 fishermen even in the resource at any one time when one of these floaters might be coming down on these between 6 and 17 days out of the year. Now when we think about the fact that floating is not banned like this on practically every other river in the country and we think about the fact that we're talking about between 6 and 17 days out of the year and that there's only maybe 1 to 4 people that might even encounter a boater, how could that constitute substantial interference on the Wild and Scenic Rivers Act and how is the agency protecting and enhancing this important use that's a recreational value that was present at the time of the study document and now they've banned it and banned it for what for some kind of possible interference and I'd like to point to the River Hawks case here because in the River Hawks case they specifically talk about the specter of interference which is what we have in this case you'll note that what the agency is talking about is that there's some hypothetical possibility for interference not that there's actual proof of it there isn't and you all we have to do is look at virtually every other river in the country or the record in this case which shows we're talking about a tiny number of days on this river like every other river mother nature does her job the water level naturally separates these uses when the flows get high they're optimal for floating when the river flows get low they're optimal for fishing and the agency's own expert pointed out in pages 722 and 723 the joint appendix that it's even further unlikely that there's any kind of interaction between these two because of timing of day fishermen fish early in the morning boaters in the afternoon and geography further restricts them because fishermen might be fishing downstream while floaters put on upstream by the time they get down there the fishermen are gone tiny number of people tiny number of days very small possibility they can even interact yes judge Hamilton I think this goes to what you're getting it but on the average how many days a year does a water flow exceed 350 cubic feet per second between Green Creek and Lick Log Creek there is a chart and it's on page 996 of the joint appendix it's a table and the environmental impact statement and it shows there's a couple of different ways that the agency answers your question and I would like to point out that the agency's own expert calls this a guesstimate because in the entire seven-year study period floating was only allowed for a grand total of two days ten people on two days were allowed to float the river and that supposedly provided the basis to show why there's some kind of substantial interference in this case but that table to answer your question shows that over 300 days per year there will be no floating on the river based on the flows it's somewhere I believe between two I don't have a table right in front of me it's somewhere between 255 and 300 days there's inadequate flows for any boating according to that table as I mentioned the expert who really dug into this and said when are people actually going to be floating on this river said 17 or less days out of the entire year well it's not true that that the Forest Service in its 2012 decision expanded the number of days that floating could be permitted on the Chattooga River so and under the 212 decision don't you get more floating days and that question is is similar to what I was discussing a moment ago that that's what the agency would like this court to believe well isn't that accurate you get more than you had before Judge King you want you just didn't win enough as far as you're concerned well it's not a matter of enough it's a matter of protecting and enhancing and it's a matter of the fact that this is a use a primitive use that's happened for over 250 years they unlawfully removed it in the first place and they only partially fixed their unlawful decision and it's not okay to just partially to have the partial unlawful ban the whole thing needs to be removed it's not a red light with the act you understand that red light yes so you save some time and we thank you very much thank you Galbraith is it miss Dowdy that pronounced that correct nobody I'm so I didn't pronounce it correctly I apologize good morning I'm here on behalf of Georgia Forest Watch I'd like to reserve two minutes who's your clients Georgia Forest Watch thank you for the Forest Watch is a citizens group that generally often works with the Forest Service and did you and you support the Forest Service not exactly not anymore not after you you intervened in the district court to support the Forest Service we intervened on the side of the Forest Service because it was the more straightforward party to intervene on the side of but the intervention was only to support the force that's not what we requested I know it's what you requested but you were allowed to intervene you intervened in the district court to support the Forest Service we and that's the only purpose for which you were allowed to intervene correct that that's the only purpose which you can be here you might be appealing we are ruling in that regard but yeah but you you in the district court supported the Forest Service that's all you could do well and and that we think that's an error on the part of the the district court she was that she was too narrow in the intervention order correct and what the what the Forest Service is going to argue is that this court should apply abusive discretion standard to that but it's clear in the Fourth Circuit that the abuse of discretion standard applies when you're deciding whether to allow someone to intervene as a bride and the test there is whether there's a new file a notice of appeal we did file a notice of appeal and how do you have standing to file a notice of appeal because we were interveners in the case we were granted the right to intervene as of right because the court recognized we had an interest and impairment of interest and that we had to enact with inadequate representation by the existing parties in the case of you have a separate lawsuit pending where you have all your claims going to we have a separate lawsuit pending one of that consolidated and judge Lewis wouldn't do it for you that's correct we think that was an error you're appealing that to we have not appealed that that case is the denial of the consolidation we did not appeal the denial we have stayed the the abuse of discretion standard applies to whether or not to allow a party to intervene as a bride once the party has intervened as a bride it's very clear in the Fourth Circuit that the only restrictions that can be placed on that party who's now considered an original party for all purposes are of a substantive rights of the party can't be curtailed and the test is whether any restriction that's placed on the party is fundamentally fair to every litigant and the Forest Service decided has cited the the Advisory Committee notes to rule 24 in support and this court has rejected that in Arch Cole so I urge you to look at that I'd also urge you that the most straightforward way to resolve this matter and our case pending also at the district level is to direct the district court to hold that the Forest Service's 2012 decisions are in violation of the Forest Service's own access regs which are found at 36 CFR 261 77 and that's attached to our opening brief yes okay before you get to sort of the underlying merits um even assuming even if I assuming for a moment that there was a mistake an error when the scope of your intervention was limited I guess I don't see what the consequences are so what you have a separate case pending you can raise all of your claims there what's the problem well and that's why we argued that the error was also made and not consolidating the cases because the court said the reason that we're restricting you which we think was invalid is because we're not going to get well originally it was that we were aligned but the reason it wasn't consolidated is because we'll get to your issues in a separate case and we won't address them here the court went on to address our issues because it ruled very broadly it said we find that the Forest Service's 2012 decisions don't violate the Wild and Scenic Rivers Act we find that the court's decision in the context of particular arguments that were being made right the court rejected specific arguments going to that question but not yours but in a very sweeping way the court didn't the court said specifically the district court judge said I'm not reaching your claims and there was that specific finding on your motion to consolidate I mean the court made a finding that the outcome or the result in your case would not depend on that case and had she done that it might have been an error without without any substantive consequence but she didn't what she did then was rule broadly on the claims that were at issue in the case that we asked to be consolidated and so those issues are being addressed by this court today and were addressed by the district court so an alternative would be for this court to remain the case and have the ruling not extend to my clients arguments but the way the way she actually ruled was broad and sweeping and keep in mind the reason for intervention is a right the court recognized that we had interest in this case and that there would be an impairment of our interest so you can't have it both ways you can't say there'll be an impairment of interest but we're not going to touch your interest it doesn't it's nonsensical and that's the reason that you generally can't put restrictions on the rights of parties who've been allowed to intervene as a bride I see I have a stoplight yes wait hold on isn't it true you don't have any claims or cross claims or counter claims pending in this particular case do you we were restricted we were granted intervention as a bride only to defend on the part of to be up to align with the Forest Service's defense in fact the court later struck our answer the question okay we do not and it's because we were not allowed to well your case is still before the district court how are you how are you going to be prejudiced here you can assert all the claims you want to in that case it's still pending before the district court because it's already been decided here so race judicata basically I don't I don't understand the it doesn't make sense to allow a party to intervene as a bride because you have an interest in the case that's going to be decided and impaired by the case and then argue that we can't be a full party to the case actually because our I don't understand how you can if the judge let prevent you to interview intervene to support the Forest Service and now you're coming up here arguing against the Forest Service the Forest Service so you've expanded your intervention anyway because you're saying that the Forest Service was wrong when we know you were prevented intervene only to support the Forest Service and you got another lawsuit where you're complaining about the Forest Service I'm bad yes we basically that's just asking the same question to judge okay but when we when we moved to intervene and we moved to intervene and we we explained our position which was not aligned perfectly with the Forest Service and then we lost on that but you can say the judge was wrong you can argue that the judge was wrong in limiting your intervention but I don't know how you can go beyond that we are arguing I don't know you can go beyond that in this case we are arguing that and this is the time that we it's not an under locutory appeal so this is our opportunity to do that and to correct this error the court needs to remand the case to the district court so that we can be treated as parties because in the case of DC smart just recognize that when you limit the rights of an intervener the danger is that we have made ourselves vulnerable to complete adjudication of the case by the court and that is what actually happened here despite what the judge has said the judge said I'm sorry I know your time is up but the judge said specifically I'm not deciding your claim she must be aware of this she denied the motion to consolidate she made a decision that for to do it in two cases not one so I guess I just I don't see what the surely she will be aware when you come back to her that this is that other case she was talking about right well there's a factual twist here the judge who made that the judge was changed in our case and so she may not have been fully aware of that and then now we're going to have another judge when we go back but the judge who wrote the decision that we're reviewing here that was the she's one who denied the motion to consolidate right you denied the motion to finding to which we would ordinarily extend great deference that there's no risk here and yeah what happens in one case will affect the other right and when and there is a great deal of deference supported to district court just justice in in denying motion to consolidate there is not a great deal of deference afforded to a district court justice in in limiting the rights of an intervener as of right after that's been granted so they have a lot of discretion in deciding whether or not to grant it once you're in you're a party you're treated as an original party so we should have been allowed to make our case as is we could sort of do a whole lot of work and have this small group be involved in a case all the way to here but anytime the court wanted to ignore us it chose to do so so for example it ignored our access regulation we sort of led you through the red light but we've given you enough extra time I think okay now pretty best pronounce it again mr. Doe now who you for our I represent the rust family the rust family yes all right sir nice to have you here thank you your honor the rust family owns property within the designated one and seen it record or because the purpose of the wild and scenic designation is an issue in this case so are the rust family's property rights the paddlers are asking for a broad interpretation of that of the wild and scenic River Act that would set aside existing property rights within the designated corridor and the headwaters of the corridor and the Forest Service is asking by the headwaters of the quarter you mean way on the top well your honor it's yes and Green Creek as you can see on the map and the rust fabric property is just above Green Creek it's the white area and it goes up and even above Grimshaw's and it's on one of these figures it's kind of white yes private property is white and the forest property is green right so it's in the northernmost part of this thing so it's up north yes it's on the river it's up river up river yeah go ahead I'm sorry let me ask you this question if this case went your way what would you have this court do or and or instruct the Forest Service to do your honor we would have this court make a ruling to hold the parties to we believe that for concessions that may blow that the Forest Service does not have the authority and is not empowered to manage the private segment of the Chattooga River which is where the property of the family is have they attempted to do that your honor they're asking this court in our opinion no answer my question has a Forest Service attempted to manage the river that borders the rust family's property yes your honor because in the actions they take they imply that they have the authority to prohibit or ban voting on the rust family property and that would imply that they have some ability to decide who or who and when and where people can vote on the entirety including the private segments where is that in the record your honor in their own brief the the forest I'm not talking about your own brief I want to know where it's in the record what your honor there in 2012 they indicated that they were opening they there had not been any voting allowed and that they were opening banning voting only on and we're silent as the rest of it and in any event your honor I would point out that American Whitewater in this case is asking for such a broad interpretation of the Wild and Scenic River Act that would it would include in the value section if you adopt their definition of the act it would include their ability to have public access on the entire river which we obviously oppose I mean you you're complaining about the Forest Service from the other side you're completely opposed to American Whitewater yes even more so that's what in some way to record y'all refer to them as a kayak lobby we would we probably do your honor and that we refer to them as the paddlers the boaters sailors the kayak lobby yes yes as you can see when the river goes across the property where the rust family is it's barely a trickle in these your honor what we own is the property the stream bed and we own the space that the water goes through and we therefore should control access do you own the water don't we own the space that the water goes through your honor just as we own the space that the air occupies just over the property which means you control if you're a private property owner you control access you don't claim the water we don't claim the water but we would claim that we control this water goes after it comes out of those mountains up there it goes all the way where to the Atlantic Ocean down Savannah I believe that's correct your honor eventually the water does judge Hamilton let me ask you one other question I don't understand how the rust family's property is implicated the Forest Service's 2012 decision does not permit floating above Green Creek isn't that correct well your honor there they have not affirmatively said they're allowing isn't that correct it does not but your honor the manner in which they have done it implies that they have some authority to decide that one way or the other and certainly the position of American whitewater implicates the private property rights because in their own brief in their argument and they haven't limited that they're saying that they want this court that this appeal involves the entire headwaters in the entire 27 miles and that includes the private segments including the rust family I thought that what American whitewater wants is a ruling that the Forest Service's 2012 decisions are invalid but the Forest Service says those decisions don't touch your property so even if American whitewater wins what will the implications be for your property it will invalidate certain decisions that don't include the the way they want you to get there is to adopt this very broad interpretation of the Wild and Scenic River Act in which they argue they have the right as a value to access the entirety of the headwaters right now that's the only place perhaps that we're talking about but if this court takes their bait and adopts that wide interpretation it directly implicates the private property rights of the rust family. Judge Hamilton anything else? No I don't think so. Thank you very much. Thank you. Appreciate it. Now Ms. Robertson. May it please the court Nina Robertson on behalf of the Forest Service this court should uphold the Forest Service's reasonable decision to allow limited floating on the upper Chattooga. We'd uphold Judge Lewis that's what we ask to review I think. Certainly your honor. She reviewed your decision. The district court was correct in finding for the Forest Service because the decision was strikes a reasonable balance among the disparate users here including the river users the property owners and the organization's concerned with the river's conservation. Unless the court would prefer otherwise I can address first American Whitewaters arguments and then proceed to address the issues raised by You do it just the way you want to do it. Certainly your honor. Until you get questions and then you answer questions. And so with respect to American Whitewaters assertion that floating is an outstandingly remarkable value that should be protected under section 1281 of the Wild and Scenic River Act. That's his number one complaint. Certainly your honor. But you all goofed up on that. And he's incorrect. Floating is not an ORV under the Wild and Scenic River Act. Recreation is and as the Forest Service clearly explained in the environmental impact assessment and it's in its decision documents floating is just a subcomponent of recreation and is not not entitled to any special protection. The Wild and Scenic River Act contemplates many uses of wild and scenic rivers and gives the competing river uses. As the court has indicated fishing is in direct conflict with floating in certain and under certain circumstances. And here the Forest Service recently determined that where fishing is most popular floating should not be prohibited. That's only along a four mile stretch and that's four miles of the 21 other miles on which floating may occur. So there's no there's no way in which floating should be held above fishing and that the Forest Service had a reasonable basis on which to conclude that the conflict could arise if it were permitted along the four mile stretch. There's no also American Whitewater points to a substantial interference standard. The Forest Service doesn't need to meet that standard. It must only under the Wild and Scenic River Act take into account different uses and strike a balance. And there's clear authority for that. I would point the court to the Hell's Canyon case that the Ninth Circuit decided in which the court indicated the the need for balance among competing uses. In that case it was between motorized boating and non-motorized boating. And there the court found that the the managing agencies have considerable discretion and how they strike that balance and it did so here. With respect to Georgia Forest Watch's claims I would just urge the court to hold to review the district court's decision to limit intervention to abuse of discretion standard. There's no case directly on point because in fact there's been no this court has never been presented with a factual scenario similar to this case in which the intervener didn't actually assert claims against the party against it was arguing and it was entirely reasonable for the district court in this unusual circumstance to limit the intervention of Georgia Forest Watch to just defending the Forest Service in this case. I'm sorry can you just just stop on there for a minute. Why was that reasonable? I am having a little bit of right is that the interests aren't otherwise adequately represented. But wasn't the Forest Service adequately defending its own plan? Why would you have someone come in just to do that? You're you're saying that even the the district court's decision to even grant intervention in the first place might have been there. As a matter of right. Well it just well as a matter of right. To both grant it as a matter of right and then limit it to covering ground that was already perfectly well covered. If the predicate is that the interests aren't otherwise being represented wasn't the Forest Service already defending its own plan? Certainly your honor. I still don't understand what the district court did there. Yeah so the district court actually might have in the first instance even incorrectly granted intervention of right. We're not disputing that here right now. That was you know discussed at the district court level. But given the fact that the district court made their decision we then moved in the district court to at least have the terms of the limit of the intervention be limited and to strike Georgia Forest Watch's prayers for relief against the Forest Service because it hadn't asserted any claims. And we think that this court should review that for abuse of discretion. And even if it reviewed it and added de novo standard we think that the district court's decision passes muster because because Georgia Forest Watch hadn't asserted any claims against the Forest Service. What do we do with their appeal? Excuse me? What do we do with Georgia Forest Watch's appeal? They've filed an appeal here. We we don't think that that appeal was proper. Do you think we should dismiss it? Certainly your honor yes. Well but they're one of the parts of their appeal is that the intervention was too narrow. The appeal, the merits of the appeal could be dismissed. The merits of sorry the merits appeal could be dismissed or the court need not reach their merits arguments. But with if the court were to rule on their appeal of the denial of their if the court were to reach the issue of whether or not the district court properly limited their appeal and rule on it. So you don't want the appeal dismissed? That's what I'm thinking. The government's talking out of both sides of its mouth on this point because you said the appeal should be dismissed but now you say they do have right of appeal on the narrowing. The government concedes that they have a right to appeal that particular issue. So you don't want the appeal dismissed in part? With respect to the merits appeal which is yes yes but yes with respect to the Rust family's claims I would just make two points. What are y'all doing today? Exactly that is in fact that the critical question and the answer is nothing your honor. The Forest Service has never tried to assert management authority over the Rust family's property and there's no live dispute between the Rust family and the Forest Service in this case. Therefore any any opinion that the if the court were to to grant the Rust family the relief it seeks which is some sort of declaration about the scope of Forest Service authority it would be it would be essentially issuing an advisory opinion. There is no live dispute as you recently just heard the the Rust family only has a problem with the relief that American Whitewater is seeking. But who owns that water? Your honor that that gets to my second point and the the water is a public good no private entity owns it. And it's owned by the people of the United States? Yes your honor. And they own the river bottom? So your honor the stream bed and my the government has never seen that or the that issue has not been resolved. The government doesn't necessarily agree that they own the river bottom but that's not an issue here? Exactly. Where is the I'm just curious this cause this case came in South Carolina where's this the state line? The state line is the border. So there's three borders at issue your honor. Three borders North Carolina, South Carolina, and Georgia. Well is a border in the middle of the river or on one side or the other? So the the border is basically in the middle of the river the headwaters. State line from between Georgia and first of all between North Carolina and South Carolina is in the middle of the river and then the state line between Georgia and South Carolina is in the middle of the river as far as you're concerned? Yes your honor. Okay. I know the reason I asked that cause up in West Virginia the Ohio River border is part of it and we all in West Virginia always got stuck with building the bridges because they said the lot the border was on the Ohio side at the high-water mark so West Virginia had to pay for all the bridges and apparently they don't do it that way down in. Fortunately to my knowledge that just does not exist in this case. Pardon? Fortunately that that issue is not live in this case. It's not an issue in this case I'm sure. And I was I right that the water goes to the Atlantic Ocean at Savannah? I believe that's correct. Goes down to the Savannah River and flows down all the way to Savannah. I'm not sure about that. I believe that's got to go to the Atlantic Ocean. Eventually it does. Or I guess it would go to Gulf of Mexico. I just didn't know where it went for sure. That wasn't in there I didn't see it. Yeah it's not in the record. But it runs downhill all that water right keeps running downhill. Keeps going southward Yes. Yes. Unless the court has any further questions I will I will conclude. Yes. Judge Hamilton. I just want to ask you or maybe the members of the court if you ever read Pat Conroy's book Deliverance? I have not read the book or seen the movie yet sadly. Well it was fictional to a large part but it was filmed on the Chattooga River. In fact yes it was filmed on the Chattooga and actually as the record shows after the that movie became popular the user the visitorship to the river increased tremendously. Hence the Forest Service's need to manage the river carefully and balance balance uses. I'll admit that I have seen the movie. Thank you. Thank you very much Miss Robertson. Now we go back here to Thank you Your Honor. I just want to point out very briefly that the whole purpose Congress's intent in passing the Wild and Scenic Rivers Act was that certain specific outstanding remarkable values such as recreational values such as boating on this river would be preserved for future generations. And what the Forest Service is arguing here basically undermines that entire purpose. What does the protect and enhance standard mean? According to the Forest Service nothing. They can willy-nilly eliminate, ban, do whatever they want. What about the second standard in section 1281? Oh yes. The significant question in this matter is do you how do you find that the Forest Service's 2012 decision is arbitrary and capricious? It's arbitrary and capricious for a number of reasons. The facts that I listed earlier there's hardly even an and somehow they've determined that boaters should be completely excluded from the resource. And there's no evidence in the record that there's any what's called asymmetrical reason for that supposed imagined conflict. Why just ban boating? Where are the hiker free days? Where are the fishermen free days for boaters? It's completely arbitrary and capricious that if there is some kind of encounter that they just decide to take a wilderness compliant original wild and scenic reuse that was a protected value and eliminate it from the river during most of the year and at all times on one of the most important sections of the river that joins the top and the bottom of the river together. You take issue then that they didn't make a balanced decision looking at all of the uses of the river and they didn't sort of divide those up and give everybody an opportunity so that was a balanced decision. You take issue with that? That's right Judge Hamilton and there's not even a reason to balance uses in this case. These are all compatible uses they are on other rivers and there's no reason to even get to the second test on their Wild and Scenic Rivers Act which is whether there's substantial interference because there is no there's barely an encounter. They can protect and enhance all of the values that I listed that are set forth in the study. They don't conflict with one with one another at all and there's no basis in the record for saying that they do. And even if there was some kind of small interference it's certainly not substantial and again the agency argues that well that standard doesn't mean anything either. Hell's Canyon case large in that case a large amount of motorboat use was found to be not a substantial interference. In this case we're talking about hand powered floating. How can large amounts of motorboat use be not a substantial interference and yet primitive kayaking substantially interferes with the Congress had actually legislated it was a proviso to the designation that there would be motorized boating. That's exactly right which is certainly a distinction here but in the Riverhawks case in that case they also found that large amounts of motorized use did not substantially interfere with the same parties that are aggrieved in this case. Primitive floaters. How can this be possible? This decision is an absurdity on every level from arbitrary and capricious all the way up through substantial interference and protecting. You say it's an absurdity? It is. It's a complete anomaly on river management in the entire country. You're talking about Judge Lewis's decision or the Forest Service's decision? The agency's decision. Agency's decision is an absurdity? Yes. How long have you all been involved in it since when? Since the early 1990s. I personally have been representing these parties for 20 years. 2003. Yes your honor. And yes your honor. See I have a stoplight. Thank you. Thank you very much. Appreciate it. And Mr. Dowdy? Well let's see. On my list it's Richard. It's flipped there. Now it looks like to me. Your honor, I want to reiterate that the party, the private parties interest are at risk in this case and it's because what the Forest Service just said that they control the water. They make concessions below as to that the rust on the property and we would cite the court to Steel Creek Development Corporation versus James in North Carolina case in which it indicates that if you control the streambed, if you own the streambed through which the water flows, you have the right to exclude boating on that property. So as a matter of law we would say that the fact that rust on the property settles the case as to whether there's access on the water that happens to flow across the property. Also the people I mean. They wanted to. I think there are restrictions on the dam but that has to do with conduct that persons owning the property do and it has to do with riparian rights and this case does not really deal with riparian rights. It's dealing with public access to allowing the public to come on this private property. There were concessions made below by the parties and we would ask this court if it rules that it hold their ruling strictly to the area below Greens Creek and that this does not in any way resolve or indicate that private property is open to public access. This area is it is it risk it's is the issue in this case because by the Forest Service's own chart it's included within the assessment area and that gets to our NEPA argument your honor which I did not have time to address. Yes. Well you can you can do this on my time during your initial appearance. I pointed out to you that the 212 decision does not permit floating above Green Creek. Now how is the Forest Service interfering with the waters abutting the rust family's land? Because there your honor it's our position that they're asking this court to find that they have some kind of discretionary authority to manage the entire river regardless of if it's flowing over private property or not. Well tell me tell me specifically how they're doing that. They're not going to permit any floating above Green Creek. So Green Creek. By even indicating they have some kind of authority to not allow floating above a certain area it's an indication that they are in some way think they have the discretion and the authority to allow it if they should change their mind in the future. And in this and in this case. Well you could come back if they did that. Well your honor. That issue would be right. We say it's right now your honor because of the positions taken by the other parties in this case which are asking for a broad ruling on the entire headwaters that would subsume arguably what they're asking you to do is subsume private rights without our day in court. Well the Forest Service says we just ought to affirm Judge Lewis as I understand him. Well. And dismiss part of that other appeal maybe but. Well we would ask it if it's affirmed that the Forest Service be held to the concessions we think they may blow in which the district court found our on the basis of which they found our issues not right and that is the Forest Service conceded it does not manage our property which we say includes the stream bed and right to exclude. We normally don't decide things that we don't have to decide. We resolve the appeals the issues that are fairly presented. It's the way we normally operate. Otherwise we'd be doing what we'd be issuing what they call an advisory opinion. I understand that your honor. But you don't want an advisory opinion. I don't want an advisory opinion but I don't want so broad an opinion that later when we come back somebody cites your opinion and says well you were in court and and the court ruled that there's public access to the entire headwaters and that's already been decided. If we just affirmed Judge Lewis would that good to be all right with that then? As long as the court carefully notes that it does not is not deciding the issue of what happens when the Chattooga is flowing across private property. If the court carefully does that we would have no problem your honor. Thank you. Thank you very much sir. We appreciate it. Ms. Dowdy. The Forest Service struggled to address the procedural questions raised by Judge Harris. The the issue that there was never an issue as to whether or not Georgia Forest Watch was allowed to intervene as a bride. It was. Nobody challenged that. There was no challenge at the time. What counsel referred to was at the way months later after motions for summary judgment the Forest Service moved to successfully to strike the portions of Georgia Forest Watch's the the prayer for relief in Georgia Forest Watch's motion. So the issue before this court is not whether which would be an abusive discretion. It's what conditions and it's clear from Stringfellow, Gould, Arch Cole and Columbus America that you cannot place restrictions on an intervener as a bride. And I would urge you to look especially at Arch Cole. I'd also urge you to consider that the standard of review that was applied by the district court was incorrect with regard to the Forest Service's decision. The Forest Service in this case should not be afforded deference and there are several reasons for that. First, yes. Judge Hamlin has a question for you. Well, as Judge King pointed out earlier, you were permitted to our first watch was permitted to intervene on behalf of the Forest Service and now you up here arguing against the Forest Service. That was an error. We should not have been limited to only be the Forest Service's litigation friend, I guess. I don't I don't even know what that was a basis on which you were permitted to intervene. It wasn't. That was an error because we look at our supplemental minute memo when the court set on our motion for over eight months. When you look at our supplemental memo, we made clear that we were not aligned with the Forest Service. Not only that, there's an administrative history going back to the 90s. But you were aligned with the Forest Service. That was the court order. You have to abide by court orders. That court order is an error and we're challenging that. Well, you say that the court order is an error but you still can't argue against the Forest Service under that court order. But this is our only chance to address the merits. This is the time when you have to address another lawsuit. We do. If you send us back, we have the opportunity in this. That lawsuit is was should have been consolidated if the court was going to address our issues in this lawsuit. If the court had somehow, I don't know how you could do this in this case, kept the issues separate in the two lawsuits, then perhaps that would have been right. But in fact, the failure to consolidate just compounded. And the only reason we filed the other lawsuit was to avoid the situation that happens here, which is that we can do all of this work up here and be basically ignored by the district court at at will, which is what happened. And after having recognized that we had an interest interest that could be impaired, that doesn't make sense. That's fundamentally unfair. And the test is fundamental fairness to litigants. Thank you very much. We appreciate the efforts of all the lawyers in the case. I know it's been a tough job and you'll done a commendable work with respect to it all the way through. Well, Judge Harrison, I'll come down and Greek Council and the court will stand in recess for about 15 20 minutes while we we conference and reconstitute the panel.
judges: Robert B. King, Pamela A. Harris, Clyde H. Hamilton